IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| CHARLES and SHARON HAYNE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 09-2202-JWL |
| | ) | |
| GREEN FORD SALES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the court on Plaintiffs' Motion for Attorney Fees and
Expenses (Doc. 48) and Motion to Enforce Settlement (Doc. 45).

This action, which alleged fraud, breach of implied warranty of merchantability,
and violations of the Kansas Consumer Protection Act, (KCPA) Kan. Stat. Ann. § 50-623
*et seq*, stemmed from Plaintiffs' purchase of an allegedly defective Dodge truck from
Defendant.  Plaintiffs initially sought $50,000 in compensatory damages, $500,000 in
punitive damages, statutory penalties as provided for in the KCPA, attorney's fees and
interest (Doc. 1).  The parties entered into a settlement agreement in March 2010 that
provided for Defendant to return the purchase price of $24,500 and to pay $3,069.35 in
expenses incurred by Plaintiffs in repairing the vehicle and obtaining a rental car (Doc.
45-1).  Defendant denies all liability to Plaintiffs for all of their claims but, for purposes
of settlement, agreed "that plaintiffs are entitled to have their attorneys' fees and expenses
for prosecuting their claims against the defendant assessed to the defendant."  (*Id.*)

The parties agreed that, if they were unable to reach an agreement regarding attorney's fees and expenses, they would submit the matter to the court. (*Id.*)  Plaintiffs seek payment by the Defendant of more than $60,000 in attorney's fees and expenses; Defendants claim that roughly $15,000 should be awarded.  Having been unable to agree, the parties have submitted the matter to the court to determine a reasonable attorney's fee.

In addition, Plaintiffs have filed a Motion to Enforce Settlement, which has been partially resolved by a telephone conference (*See* Docs. 55-57).  Still unresolved from this motion, however, are Plaintiffs' demands for (a) interest on a portion of the settlement payment, and (b) $322 to insure the vehicle after March 2010, costs that Plaintiffs allege are attributable to delay on the part of Defendant in releasing settlement funds and retrieving the vehicle from Plaintiffs' home.

## **DISCUSSION**

### **1. Motion for Attorney Fees and Expenses**

Pursuant to Kan. Stat. Ann. § 50-634(e), the court may award reasonable attorney fees, limited to the work reasonably performed, if a consumer prevails in establishing that a supplier has committed an act or practice in violation of the KCPA and the action is settled.  Parties also may agree for one side to pay the other's attorney fees and expenses. *See, e.g., Brennan v. Kunzle*, 37 Kan. App. 2d 365, 392 (2007).

The parties disagree as to two matters with regard to the calculation of attorney fees: first, whether the alleged KCPA violation must be segregated from the claims of fraud and breach of implied warranty of merchantability for purposes of calculation of

2

attorney fees; and second, assuming the claims are properly segregated, whether the amount requested by Plaintiffs is reasonable.

## A. Segregability of work performed on KCPA claim

The parties disagree as to whether Plaintiffs' counsel had a duty to separate the time spent prosecuting the KCPA violation from the claims of fraud and breach of implied warranty of merchantability.  The normal rule in Kansas is that attorneys' fees expended while prosecuting other claims are not recoverable under the KCPA. *DeSpiegelaere v. Killion*, 24 Kan. App. 2d 542, 549 (1997).  An exception exists, however, when a KCPA claim involves a "core set of facts" shared with other claims such that it is "clearly necessary for all of the underlying facts of the transaction to be fully developed in order to prosecute the KCPA claim."  *York v. InTrust Bank, N.A.*, 265 Kan. 271, 307-08 (1998).  In such cases, the KCPA claim is "inextricably intertwined with the single transaction" that led to litigation.  *Id.*

The KCPA provides a cause of action for deceptive acts by a retailer including "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact."  Kan. Stat. Ann. § 50-634(b)(3).  This claim shares a core set of facts with the facts necessary to sustain an action for fraud– namely, that the previous damage to the vehicle was material to the transaction between Plaintiffs and Defendant, that Defendant had knowledge of the damage to the vehicle, and that Defendant willfully

or intentionally failed to communicate the information about the damage, to Plaintiffs' detriment.[1] *Cf. DeSpiegelaere*, 24 Kan. App. 2d at 549.

Additionally, the court finds that the claim of breach of implied warranty of merchantability shares a core set of facts with the other two claims.  To sustain an action for breach of implied warranty of merchantability, the buyer must establish that goods sold by a merchant were defective, i.e., not fit for the ordinary purpose for which such goods are used, and that the defect was present when the goods left the seller's control. *See Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 467 (1983) (holding that jury could have inferred plaintiff's reasonable expectations as to use of vehicle and that defect was present when it left defendant's control).  In this case, the "material fact" that Plaintiffs allege was withheld or concealed by Defendant, for purposes of both the fraud and KCPA claims, was the allegedly defective condition of the purchased vehicle at the time of sale, which, if established, would suffice to establish a claim for breach of implied warranty of merchantability.

Additionally, even if the three causes of action in this case did not stem from one core set of facts, the court notes that the Settlement Agreement and Release reached by the parties explicitly states that Defendant agrees "that plaintiffs are entitled to have their

---

[1]Defendants concede, in their reply brief regarding attorney fees, that the fraud and KCPA claims "[m]aybe... can be intertwined" but point out that the fraud claim sought punitive damages, whereas the KCPA claim sought statutory penalties.  This difference in the legal remedies specific to each claim, however, does not alter the conclusion that the two claims stem from the same core set of facts, i.e. the sale of the vehicle and the alleged concealment of material facts about the vehicle's condition.

4

attorneys' fees and expenses for prosecuting their *claims* against the defendant assessed to the defendant" (Doc. 45-1) (emphasis added). Given that Defendant has not conceded its liability under the KCPA, the award of attorney's fees in this matter is provided for, arguably, not by the specific provisions of the KCPA but by agreement of the parties. *See Kunzle*, 37 Kan. App. 2d at 392. Defendant appears to concede, in its response to Plaintiff's motion for attorney fees, that the terms of the agreement, at least with regard to the payment of expenses, are governed not by the KCPA but by the settlement agreement (Doc. 50 at 10).

For these reasons, the court concludes that Plaintiffs' counsel was not under a duty to segregate its billing records or account separately for time spent prosecuting the KCPA claim.

## B. Determination of reasonable attorney's fees

The determination of the reasonable value of attorney's fees in a given matter lies within the sound discretion of the trial court. *See, e.g., City of Wichita v. BG Products, Inc.*, 252 Kan. 36, 372-73 (1993). Kansas courts traditionally calculate this amount by first determining what constitutes a reasonable number of hours to work on a given matter, then multiplying it by a reasonable hourly rate. *See Gigot v. Cities Service Oil Co.*, 241 Kan. 304, 318-19 (1987). The resulting figure, known as the "lodestar" fee, is subject to adjustment based on the factors set out in Rule 1.5 of the Kansas Rules of Professional Conduct used to determine the reasonableness of an attorney's fee. *Id.*

### i. Reasonable number of hours

5

The first step in this inquiry, then, is to determine the number of hours counsel reasonably expended on the litigation.  The burden is on the applicant to prove that the hours billed are reasonable "by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."  *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998).  An attorney may not bill to opposing counsel fees it would not be able to bill to the client.  *Id.*  The court must also analyze whether the applicant has exercised "billing judgment," and it may reduce the number of hours used devoted to specific tasks if the number of hours claimed by counsel includes hours that were "unnecessary, irrelevant, and duplicative."  *Id.*  When performing such an adjustment, the court need not identify and justify each disallowed hour but need only articulate reasons for a general reduction of hours needed to arrive at a reasonable number of hours.  *Id.*

Defendant objects to the overall amount of attorney's fees requested by Plaintiffs but does not list specific time entries it believes are unjustified (*See* Doc. 50).  Defendant notes, however, that in April 2010 it offered to settle the matter of attorneys' fees for $15,000 (Doc. 50 at 5) and states that, given this offer of settlement, Plaintiffs' counsel should not be compensated for its subsequent time spent researching attorney fees.

The court finds that the billing records submitted by Plaintiffs' counsel in this matter are relatively well-detailed, appear to have been made contemporaneously, and provide a sufficient description of the types of activities to which the billing applies, such

as "Letter to Defendant's counsel re: deposition of prior owner" (.2 hours, Sept. 27, 2009) and "Read results of title search documents from South Dakota" (.2 hours, Aug. 9, 2009). (*See* Doc. 48-4). The billing records do not, as a whole, suggest duplicative efforts by Plaintiffs' counsel.  For example, the largest single billing item is a 20.4-hour trip taken to South Dakota by Plaintiffs' lead counsel to conduct depositions (*Id.* at 13).  The records do not indicate that any attorneys or paralegals other than lead counsel attended this deposition on behalf of Plaintiffs.

Prior to settlement of this matter, Plaintiffs' counsel had expended roughly 77 hours on the case in slightly more than 1 year, an amount of hours that the court finds is not excessive given the circumstances.

The court notes, however, that prior to settlement, in early October 2009, Plaintiffs' counsel billed approximately 11 hours of associate attorney time for researching, drafting and revising motions (a) to compel discovery, (b) to strike affirmative defenses, and (c) for sanctions against Defendants based on inadequate defenses raised in Defendant's answer and Defendant's alleged failure to respond adequately to Plaintiffs' interrogatories (Doc. 48-4 at 7-8).  The Magistrate Judge who was handling the case determined that Plaintiffs had filed their motion to compel discovery before meeting their duty to confer with Defendant (*See* Doc. 32).  As such, any time spent on preparing and filing such a motion is not reasonable and should be reduced from the overall number of hours billed by Plaintiffs' counsel. Although the billing statements for these items stray into "block billing" by grouping work done on the

motion to compel discovery together with work on the motions to strike and for sanctions, the court finds that it is likely, based on the length of the relevant pleadings and the complexity of the issues involved, that Plaintiffs' counsel expended at least 2.5 hours on the motion to compel discovery and that this amount of time should be reduced from the overall number of associate hours billed by Plaintiffs' counsel.

Additionally, the court notes that, in the months since the matter has been settled, Plaintiffs' counsel has submitted bills for more than 75 hours of associate-attorney time related to its own pursuit of attorney's fees– by the court's tally, approximately 35 hours of drafting; approximately 29 hours conducting legal research on the subject of attorney's fees; and 11 hours performing other tasks such as reviewing the case file and preparing documentation.  This amounts to about 43 % of the 173.3 hours that Plaintiffs' counsel reports expending on the matter since inception, and is roughly equal to the amount of time it took Plaintiffs to settle the matter in the first place.

"An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application." *Case*, 157 F.3d at 1243. Certainly, the documentation, motions and affidavits that Plaintiffs have submitted to the court took considerable time to prepare.  The original motion for attorney's fees consisted of 27 pages, followed by a 16-page reply.  Plaintiffs submitted an additional 149 pages to the court in support of their request for attorney's fees, but much of this consisted of automatically generated billing statements, transcripts of depositions, and copies of documents that had previously been filed with the court.

The Settlement Agreement and Release clearly contemplates that the parties would expend some time preparing a request for attorney's fees and submitting it to the court if they were not able to reach an agreement (Doc. 48-6 at 2).  The court finds in these circumstances, however, that the amount of time spent by Plaintiffs' counsel on the issue of attorney's fees is excessive and that the time billed by associate attorney Katie O'Shea for work related to attorney fees should therefore be reduced by 40 hours, which the court finds to be a reasonable reduction.  Making such a reduction would still allow Plaintiffs' counsel to recover a reasonable amount of time that might be billed to a client for drafting, legal research, and gathering documentation on the subject of attorney's fees.

Additionally, the court notes that 4.8 additional hours should be deducted from the billable hours submitted by Ms. O'Shea because four time entries billed on May 3, 2010 were submitted to the court twice, one on the "Pre-Bill Worksheet" of May 5 (Doc. 48-4 at 24) and again on the "Pre-Bill Worksheet" of May 28 (Doc. 53-2 at 1). Finally, the court finds that one hour should be deducted from Mr. Hasty's work related to a June 2, 2010 motions hearing.  The time entry related to this hearing was apparently completed in advance, on May 28, 2010, and included "estimated time" necessary to travel to and appear for the hearing (Doc. 53-2 at 5).  The hearing was, in fact, conducted by telephone, a change that the court estimates would reasonably have spared Mr. Hasty one hour of travel time.

In summary, the court concludes that the amount of hours billed by Plaintiffs' counsel should be reduced by 47.3 hours of associate-attorney time (2.5 hours plus 40

9

hours plus 4.8 hours) and that the amount of hours billed by Mr. Hasty should be reduced by one hour.

This brings the total reasonable hours expended on the matter to 60.9 hours for Paul Hasty, 55.1 hours for his associate attorneys, and 9 hours for the work of a paralegal.

### ii. Reasonable hourly rate

The court's next task, after determining a reasonable number of hours, is to determine a reasonable hourly rate.  The court must base this on what lawyers of comparable skill and experience, practicing in a similar area of specialty, would charge for their time.  *Case,* 157 F.3d at 1255.  The party requesting the fees bears the burden of showing that the requested rates are in line with those prevailing in the community.  *United Phosphorus, Ltd. v. Midland Fumigant, Inc.,* 205 F.3d 1219, 1234 (10th Cir. 2000).  The court must first determine whether evidence of the prevailing market rates is inadequate before it may use its own knowledge to establish the appropriate rate.  *Id.*

Plaintiffs' counsel suggests that $450 per hour is a reasonable hourly rate for attorney Paul Hasty, that $300 per hour is a reasonable hourly rate for the various associate attorneys who worked on the matter, and that $150 per hour is a reasonable rate for the paralegal who worked on the matter.  In support of this claim, Plaintiff cites the contingent-fee nature of the case and the fact that compensation in this matter was uncertain.  The court finds that this upward adjustment, for purposes of calculating a baseline reasonable rate, is unwarranted, given that "whether the fee is fixed or contingent" is one of the adjustment factors the court will consider, pursuant to Rule 1.5

10

of the Rules of Professional Conduct, after first determining a reasonable number of hours and a reasonable hourly rate.

Plaintiffs also have supported their requested hourly fee by attaching as an exhibit a 2009 article from Missouri Lawyers Weekly (Doc. 48-7).   The article cites hourly rates for Kansas City attorneys as high as $500 to $600 per hour. The article states that the various hourly rates contained in the survey for attorneys from a diverse number of specialties were gathered "from applications for fees... included in court filings" and that "[i]nformation was gleaned from bankruptcy cases, class action lawsuits and cases where a winning side requested attorneys' fees from the loser."  The article notes that, "If more than one rate was listed, we used the higher rate."

The court finds that Plaintiffs' submission of this article does not establish that the rates contained therein are what lawyers of comparable skill and experience, practicing in the area of law that is the subject of the instant litigation, would charge for their time.  *See Case*, 157 F.3d at 1255-56.  Plaintiffs specifically point to hourly rates described in the article for the Speer Law Firm and the Law Offices of George Barton, but the article states that the figures obtained for those two firms came from requests for court approval of contingency-fee awards in a wage-and-hour case against Wal-Mart. This falls short of establishing the prevailing market rate for attorneys handling Kansas Consumer Protection Act claims.  Plaintiffs also point to the $472 hourly rate contained in the article for attorney Jason Reschly in the area of "litigation" as a comparable figure to their

11

requested hourly rate, but the article in fact states that Mr. Reschly practices in the relatively specialized field of tax law.

Plaintiffs cite two other cases that purportedly establish the reasonableness of their requested hourly rate: *Geismann v. Aestheticare, LLC*, 2008 WL 2549009 (D. Kan. June 24, 2008), a putative class action involving alleged violations of the Telephone Consumer Protection Act, and *Christopher Shepard v. Avcorp Business Sys., LLC*, Case No. 08-cv-2327 (D. Kan), a Title VII employment-discrimination case.  The court has considered the information within these cases but finds that these cases, involving different areas of the law, do not establish that the rates cited therein (ranging from $200 to $300 per hour) are the prevailing rates in this community for legal services in consumer-protection cases.

Defendant, on the other hand, submits documents showing that a KCPA case that went to a jury trial in 2009 in a Kansas state court included a request of $150 per hour in attorney fees for plaintiff's counsel, and that, similarly, a 2006 KCPA case included the same $150 hourly rate for plaintiff's counsel.  (*See* Docs. 50-6, 50-8).  Plaintiffs' counsel responded, in his reply brief, that Defendants have failed to establish that the attorneys who submitted the $150 hourly rate in these cases had his level of experience (*See* Doc. 53).  This much is true.  Nevertheless, Plaintiffs' lead counsel has never stated in his written submissions to the court what his actual, typical hourly rate is.  Mr. Hasty has stated that $300 per hour is a "fair fee for a very experienced trial lawyer," (Doc. 48 at 13) and that "far less experienced associates" than he would be entitled to an hourly fee of $200 per hour for clients who pay a retainer fee in advance.  Yet Plaintiffs' counsel has

12

not once, in his written submissions, stated what his customary hourly rate is for a client, in any type of litigation, let alone a consumer-protection claim, who deposits a retainer fee in advance in a trust account.  He has similarly failed to state what his associate attorneys customarily charge per hour in such a situation.  In addition, while highlighting his own 34 years of experience, he has not made any mention of the amount of experience possessed by his associate attorneys, which implies that their level of experience is closer to that of the attorneys who sought, as recently as 2009, $150 per hour for their services in KCPA actions.

Given this void of useful information and the inadequacy of evidence, the court turns to its knowledge of the legal market as an expert in legal fees.  The court also notes that in *Geismann, supra*, the record contained evidence that, as of 2007, the average partner in Kansas City billed at $330 per hour and the average associate billed at $207 per hour.  2008 WL 2549009 at n6.  The court finds that, considering the information submitted by the parties and its own knowledge of the Kansas City legal market, $300 per hour is a reasonable hourly rate for the services of Mr. Hasty in a KCPA claim.  The court further finds, based on its knowledge of the prevailing legal rates in the Kansas City market, that $180 per hour is a reasonable hourly rate for the less-experienced associate attorneys who handled the matter, and that $95 per hour is a reasonable hourly rate for the paralegal who worked on the matter.

A presumptively reasonable attorneys' fee in this matter, therefore, is $29,043 ($18,270 for the work of Mr. Hasty, $9,918 for the work of the associate attorneys, and $855 for the work of the paralegal).

### iii. Rule 1.5 factors

The court finally must consider whether any of the eight factors set forth in Rule 1.5 of the Kansas Rules of Professional Conduct warrant a deviation from the presumptively reasonable amount of attorney's fees. These factors include (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal services properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services, and (8) whether the fee is fixed or contingent.

The court has considered the written submissions of both Plaintiffs and Defendant.

With regard to factor (1), the court finds that Plaintiffs expended an appropriate amount of time and labor on the matter, with the exception of the two issues described above, and that the case did not involve any novel questions or require specialized skill sufficient to warrant an upward adjustment of the presumptively reasonable fee. Plaintiff

argues that the case required a large amount of investigation, but presumably the hourly billing statements accounted for this time.

With regard to factor (2), Mr. Hasty suggests that the preclusive effect of taking this case, both in terms of time expended and his inability to take cases from Defendants' insurance carrier while this case is pending, weighs in favor of a higher fee (Doc. 48 at 21). The court notes that, according to billing records, Mr. Hasty spent, on average, 3 to 4 hours per month working on this matter between February 2009 and April 2010. Excluding a 20-hour trip to South Dakota in February 2010 to conduct depositions, the monthly average drops to roughly 2-1/2 hours per month. A case that absorbs, on average, less than half of a workday once per month in no way precludes a prolific and experienced attorney such as Mr. Hasty from undertaking other employment. Additionally, the court notes that Mr. Hasty will not be precluded from taking cases from Defendant's insurance carrier upon completion of his work on this matter.

The court has already discussed factor (3). With regard to factor (4), the court notes that a recovery of $29,043 in attorney's fees exceeds the amount Plaintiffs have recovered by settlement, but that the purpose of the KCPA is in part to encourage consumers to bring actions they might not otherwise bring given the potentially high cost of litigation. *See Alexander v. Certified Master Builder Corp.*, 268 Kan. 812, 822-23 (2000). In this case, any disparity between the ultimate recovery by Plaintiffs and the amount of attorney fees sought is not large enough to warrant a downward adjustment of the fee.

The court finds no significant time limitations pursuant to factor (5) that weigh in favor of an adjustment to the presumptively reasonable fee.  Further, the court finds that neither factor (6) nor factor (7) warrants any departure from the presumptively reasonable fee.

With regard to factor (8), Plaintiffs' counsel submits that the uncertainty of payment, from the outset of the litigation, warrants a 50 percent increase in the otherwise reasonable hourly rate.  Plaintiffs' counsel cites no authority in support of this proposition.  The United States Supreme Court, however, has rejected the idea that contingency risk should play a role in upwardly adjusting the presumptively reasonable hourly fee.  *See City of Burlington v. Dague*, 505 U.S. 557, 562-63 (1992).  Fee-shifting statutes "were not designed as a form of economic relief to improve the financial lot of lawyers."  *Id.* at 563.  Although the Kansas Supreme Court has recognized that *City of Burlington* involved only federal statutes and thus does not control in cases applying Kansas law as to attorney fees, *see Johnson v. Westhoff Sand Co., Inc.*, 281 Kan. 930, 946-47 (2006), the court nonetheless finds its reasoning to be persuasive as applied to this matter.

The court would be more inclined to adjust for a contingency fee if Plaintiffs were seeking, pursuant to a valid written contingency-fee contract, a fee, based on a percentage of the recovery, that exceeded the amount the attorney would have earned purely based on hourly rates.  *See Johnson*, 281 Kan. at 950 (upholding district court's award of $1.3 million pursuant to high-risk contingency contract, when hourly rate would have yielded

16

fee closer to $100,000).  Moreover, the apparent lack of any written contingency-fee agreement in this matter weighs against adjusting the presumptively reasonable fee upward based on contingent risk.

### C. Expenses:

The Settlement Agreement and Release entered by the parties states, "defendant has agreed, for the purpose of reaching a settlement, that plaintiffs are entitled to have their attorneys' fees and expenses for prosecuting their claims against the defendant assessed to the defendant."  (Doc. 48-6).   Defendant has raised no specific objections to the amount of expenses sought by Plaintiffs' counsel in its itemized billing statements. Plaintiffs' request for $2,114.41 in expenses, as reflected in the billing statements (Docs 48-4, 53-2) is therefore granted.

### 2. Motion to Enforce Settlement

Plaintiffs, in their Motion to Enforce Settlement (Doc. 45), sought a judgment against Defendant for $3,069.35, representing the amount of the settlement that had not, at time of the motion's filing, been paid to Plaintiffs, along with 10 percent interest per annum until the time of payment.  The Motion also asked that the court direct Defendant to pay the cost of insuring the vehicle after March 10, 2010, which appears to have been $322 (*See* Doc. 49 ¶ 6).  Plaintiffs' counsel notified the court that it received a $3,069.35 check on June 7, 2010, following a motion hearing in which the court instructed the parties as to how to go about making payment of this check and confirming receipt.  The

court regrets that the matter could not be resolved between the parties without the court's involvement.

In Kansas, prejudgment interest is governed by Kan. Stat. Ann. § 16-201 and may be awarded only on liquidated claims, i.e., when both (a) the amount due and (b) the date on which the amount is due are fixed and certain or definitely ascertainable.  *See Hofer v. Unum Life Ins. Co. of Am.*, 441 F.3d 872, 878-80 (10th Cir. 2006).  Whether to award prejudgment interest is a matter within the discretion of the trial court.  *Id.* at 879.

The Settlement Agreement and Release calls for Defendants to pay $27,569.35 and for the parties to attempt to reach an agreement on the subject of attorney's fees and expenses.   It does not specify a date by which the amount of the settlement must be paid, nor does it specify a date by which the agreement must be executed by both parties.  Plaintiffs' counsel states that the agreement was reached on March 10, the date at which Defendant concedes there was a "tentative" settlement (Doc. 47).  Nevertheless, the version of the document signed by Plaintiffs and submitted to this court (Doc. 48-6) appears to be dated March 19 and is signed only by Plaintiffs.  Defendant apparently did not execute the agreement until after April 29, prompting Plaintiffs' counsel to file a motion to enforce the settlement agreement (See Doc. 45).  Based on these factors, the court determines that the claim is not liquidated for purposes of awarding prejudgment interest because the date on which payment was due was not fixed or certain.  Even if it were a liquidated claim, however, the court would decline to exercise its discretion to award prejudgment interest, given the apparent lack of agreement, evident in the parties'

written submissions (See Docs. 45-47, 49) on the part of both Plaintiffs' and Defendant's counsel with regard to the handling of settlement funds.

With regard to Plaintiffs' claim for reimbursement for funds spent on insuring the vehicle since March 10, 2010, Plaintiffs argue in essence that Defendant breached the settlement agreement by failing to retrieve the vehicle from Plaintiffs' property at an earlier date.

The interpretation of a contract such as a settlement agreement is a matter of law. *See, e.g.*, *Allied Mut. Ins. Co. v. Moeder*, 30 Kan. App. 2d 729, 732 (2002).  The court finds that the Settlement Agreement unambiguously precludes payment of insurance costs and that, even if the agreement were ambiguous, Plaintiffs have not produced any extrinsic evidence that would alter this conclusion. The Settlement Agreement and Release states that Defendant "may" retrieve the vehicle from Plaintiffs' home but does not specify a date by which this removal must occur.  In addition, the agreement states that plaintiffs "abandon their claim for other damages" beyond what is described in the agreement (Doc. 48-6 at 2).  Plaintiffs' counsel could have included a clause in the settlement fixing a date by which the vehicle was to be removed or providing for payment of insurance costs.  Counsel did not do so.  After reviewing the written Settlement Agreement and Release, the court declines to order reimbursement for the cost of insurance since March 2010.

IT IS HEREBY ORDERED THAT Plaintiffs are awarded $29,043 in attorney fees and $2,114.41 in expenses incurred while prosecuting this action.  Additionally, the requests for interest and insurance costs in Plaintiff's Motion to Enforce Settlement (Doc. 45) are denied.


IT IS SO ORDERED.

Dated this 29th day of June, 2010, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge